Kennedy v. The State.

Filed June 22, 1886.

No. 12,792.

KENNEDY v. THE STATE.

CRIMINAL LAW.—*Right of Citizen to Pursue and Arrest Felon.*—*Murder.*—Where a pickpocket is discovered plying his vocation in a crowd, a citizen has the right to arrest him upon fresh pursuit, without a warrant, and if the wrong-doer kills him while he is attempting to make the arrest, it is murder.

SAME.—*Proof of Distinct Felony.*—In such case, on the trial of the thief for murder, it is competent to prove, by either direct or circumstantial evidence, the recent commission of the robberies and the connection of the accused therewith, for the purpose of showing that the citizen was engaged in the performance of his duty when slain.

SAME.—*Instruction.*—*Speculative Doubt.*—A speculative doubt as to the possibility of innocence is not such a doubt as requires an acquittal, and the jury may be so instructed.

SAME.—*Instructions Considered Together.*—*Practice.*—Where all the instructions, considered together, correctly state the law, the judgment will not be reversed because one may be defective.

SAME.—*Repetition of Information Not Required.*—Where the court instructs the jury as to what must be proved to constitute a felonious homicide, it is not necessary to repeat such information in subsequent instructions.

From the Decatur Circuit Court.

*J. J. Spann, J. Q. Thomas, W. A. Moore* and *J. O. Mar-shall*, for appellant.

*F. T. Hord*, Attorney General, *M. D. Tackett*, Prosecuting Attorney, *J. D. Miller, F. E. Gavin* and *W. B. Hord*, for the State.

Elliott, J.—On the 1st day of November, 1884, a political meeting was held in the city of Greensburg, and a great crowd of people gathered to hear the speaker, who addressed them from a carriage standing on one of the streets of the city. Pickpockets plied their vocation, crowding and jostling through the throng. There were at least four men engaged in picking pockets, and they acted in concert. The clerk of one of the hotels in Greensburg testifies that four men became guests of the hotel early on the morning of the 1st day of November, three of them taking rooms and the other occupying a chair in the office. The appellant is identified by the hotel clerk as one of these persons, and a police officer of Cincinnati testifies that the appellant told him several days before the 1st day of November that he intended to be at the meeting in Greensburg on that day.

Charles Wallace was called as a witness by the State, and declined to testify as to what occurred in the throng where the pockets were picked, but testified that when he was arrested Kennedy was with him and was the person nearest to him at the time. The constable, Anderson, testified that he arrested Wallace, and at the time was struck on the head by the man nearest Wallace with a revolver and felled to his knees. Quite a number of witnesses who had their pockets picked swore that they were jostled in the crowd by four men, and many of them testified that Kennedy was one of the four. David Baker, the man who was killed, as the State charges, by Kennedy, was in the throng not far from the carriage in which the speaker who made the address was standing. Some one attempted to pick Baker's pocket, and some one did pick

the pocket of Mr. Slocum, standing near by, whereupon an alarm was raised that there were pickpockets at work in the crowd. The four men who were engaged in the work of picking pockets then made their way out of the throng, and were followed by the deceased and Henry Woodfill. These two men, Baker and Woodfill, followed the men whom they supposed to be pickpockets for some distance, but ceased pursuit for a little time. They resumed it, however, after arming themselves with revolvers, and were joined by the constable, Anderson, and perhaps others. After the constable had seized Wallace, the man who was with him fled, and was pursued by Baker and other citizens. In the course of the pursuit one or more shots were fired by the pursuers, and a shot was fired by the pursued which killed Baker almost instantly. Many persons joined in the chase, and prior to any shooting the men, followed by the constable and those with him, were commanded to halt, and according to many of the witnesses outcries of "catch them," "halt," "they are thieves," or similar cries, were made by persons on the street.

The trial court permitted the State to prove by several persons that their pockets were picked in the crowd gathered about the speaker on the evening of November 1st. In this there was no error. There was evidence clearly tending to identify the appellant as one of the gang of robbers who were plundering the people. Several witnesses identify him by his personal appearance and his dress ; several quite positively identify Charles Wallace as one of the gang. Wallace himself swears that Kennedy was with him at the time of his arrest, a few minutes after the robberies were committed, and many other witnesses declare that Kennedy is the man who struck the constable while arresting Wallace, and shot Baker. It was, therefore, perfectly proper for the court to permit the evidence to go to the jury, for it is quite well settled that where there is any positive or circumstantial evidence connecting a party with a material and relevant occurrence, it is

proper to submit evidence of that occurrence to the triors of the fact.

The evidence that robberies had been committed was relevant and material, and so was evidence connecting Kennedy with those felonies. If Kennedy was one of the four engaged in picking pockets, then the constable, and, indeed, the citizens, Baker and Woodfill, had a right to arrest him upon fresh pursuit without a warrant. In this instance the evidence is strong against the accused, for here an attempt was made to pick the pocket of Baker, that of Slocum was picked near by, and Woodfill, who joined Baker in the pursuit, had also been robbed, so that these men not only had a right to arrest the felons, but it was their duty to do so, under the long settled rule thus stated in one of the old books: "All persons whatsoever, who are present when a felony is committed, or a dangerous wound given, are obliged to apprehend the offender; otherwise they are liable to be fined and imprisoned for the neglect." Law of Arrest, 200; 1 Chitty Crim. Law, 16; 1 Bishop Crim. Proc., sections 164, 165. As a citizen who sees a felony committed has a right to apprehend the felon, the wrong-doer is guilty of murder if he slays him while engaged in the exercise of that right. It is, therefore, competent to prove the commission of a distinct felony, if witnessed by a citizen, for the purpose of showing that the citizen was engaged in the performance of his duty when slain by the felon. Here, too, we have another element making strongly against the accused, for here the officer whose sworn duty it was to arrest and bring the offender to justice, was with the citizen who lost his life in pursuit of the criminal, and that officer had been struck with a weapon while engaged in the performance of his duty. A stronger case for the application of the rule can scarcely be imagined.

It is not necessary that an offender whom a citizen undertakes to arrest should be connected with the felony by direct evidence; it is sufficient if the evidence supplied by circum-

stances establishes this connection; and in this instance we have both kinds of evidence strongly, if not conclusively, connecting Kennedy with all the felonies that were committed. With many of them he was connected by direct evidence, and the circumstances fully justified the inference that he was connected with them all. No other party of men is shown to have acted as the party with which he was connected did act, and the just inference is that the members of that party committed all of the felonies. At all events, there was evidence so connecting all of the party, of which Kennedy was a member, with all the felonies—thirteen in number—as to make it proper to leave the question to the jury.

We have no doubt that the general rule is, that one distinct felony can not be established by proof of another crime, but, to this general rule, there are very many and very important exceptions. One of these exceptions, as well settled and known as the rule itself, is, that where two crimes are connected both may be proved. This familiar doctrine applies to this case. Here, the citizen knew of the perpetration of a crime and started in pursuit of the perpetrator, so that to show that he was seeking to apprehend the proper person, it was competent to prove that a felony had been recently committed, and that the pursuit was fresh. It would be impossible for a man to justify an arrest unless he were permitted to prove that a felony had been committed, and so, too, it would be impossible for the State to make out the crime of murder unless evidence were permitted to go to the jury to prove that the person killed was pursuing a felon. An accused can not deprive the State of the right to give evidence tending to show that the pursuit was rightful, by urging that in proving that fact proof is made of a distinct felony.

The court gave this instruction: " But the law does not require impossibilities in criminal cases, and, therefore, does not require, as a condition precedent, that the mind of a juror

be convinced beyond the possibility of a doubt produced from mere speculation. Whenever there is a doubt resting in the mind of a juror as to a material fact which the evidence has not removed, that is a reasonable doubt which the defendant should have the benefit of, and if a doubt material to the defendant's guilt, the juror should not agree to a verdict of guilty; but when the evidence has removed from the mind all reasonable doubt, and the jurors can only imagine a possibility of innocence from speculation, then the juror is satisfied of guilt beyond a reasonable doubt." This instruction is confused, and is justly subject to verbal criticism, but we do not think it could have misled the jury. It is evident that the jury must have understood the instruction to mean that a speculative doubt as to the possibility of innocence was not such a doubt as required an acquittal, and, thus understood, the instruction correctly asserts the law, for all the authorities agree that mere speculative doubts are not such as the law contemplates in providing that in case a reasonable doubt is entertained the accused must go acquit. The court did not tell the jury that a doubt may not arise from lack of evidence; on the contrary, it expressly said that "when the evidence has removed from the mind all reasonable doubt," there may be a conviction, thus clearly implying that there must be evidence strong enough to remove all reasonable doubt. The cases of *Densmore* v. *State*, 67 Ind. 306 (33 Am. R. 96), *Wright* v. *State*, 69 Ind. 163 (35 Am. R. 212), and *Batten* v. *State*, 80 Ind. 394, 402, are, therefore, not in point. But we are not to consider the instruction as if it stood alone, as it is well settled that all the instructions must be considered together. *Boyle* v. *State*, 105 Ind. 469; *Shular* v. *State*, 105 Ind. 289; *Story* v. *State*, 99 Ind. 413; *Goodwin* v. *State*, 96 Ind. 550. The eleventh and thirteenth instructions are upon the same subject as the twelfth, the one copied by us, and these, taken in connection with the twelfth, so clearly put the law before the jury as to make fair debate impossible.

The appellant's counsel assail that part of the fifth instruc-

tion which reads thus: "Where a felony has been committed so recently that it is yet fresh, a private citizen may pursue the felon and arrest him if he attempts to escape, and if during the flight the pursued turns upon his pursuer and shoots and kills him, the killing will be one of the degrees of felonious homicide that I have mentioned, and this without regard to the means used and efforts being made to capture him. Under such circumstances the pursued being a wrong-doer, and his wrongful act leading to the homicide, the law will not excuse him."

The objection to this instruction is thus stated in counsel's argument: "The objection to the charge is that it entirely omits to state either that the killing must have been done purposely and with premeditated malice, or purposely and maliciously done, or voluntarily even." If this instruction stood alone it would not be vulnerable to the objection urged, for it is very clearly implied in the expression, "if the pursued turns upon his pursuer and shoots and kills him, the killing will be one of the degrees of felonious homicide that I have mentioned," that the killing must be purposely done. This, surely, is the meaning that the instruction would convey to the mind of a man of ordinary intelligence; as this is so the jury could not have been misled. *Boyle* v. *State, supra; Louisville, etc., R. W. Co.* v. *Falvey,* 104 Ind. 409, p. 435; *Union M. L. Ins. Co.* v. *Buchanan,* 100 Ind. 63, p. 74; *McDonel* v. *State,* 90 Ind. 320, p. 327. But we are not to take the instruction apart from the others, and in defining the various degrees of homicide the court had very fully informed the jury in prior instructions what must be proved, and it was not necessary to repeat the information. *Union M. L. Ins. Co.* v. *Buchanan, supra; Boyle* v. *State, supra; Goodwin* v. *State, supra; Browning* v. *Hight,* 78 Ind. 257.

The other objection urged is that the instruction assumes to state all the facts hypothetically, and omits some that are essential to a conviction. In support of this contention we are referred to *Norton* v. *State,* 98 Ind. 347, and *Brooks* v.

*State*, 90 Ind. 428. But this argument rests on a groundless assumption. The instruction does not assume to state all the facts which the State must prove; on the contrary, it states an abstract principle of law, but one relevant to the case made by the evidence. We have disposed of the objections made to this instruction, and in doing so have decided all the questions which it is proper for us to consider.

A strong and able appeal is made to us to reverse upon the evidence, but this we can not do, for the verdict is supported on every material point. Counsel with vigor and ingenuity insist that the case is one of mistaken identity, and earnestly endeavor to impress upon our minds the liability of witnesses and jurors to err in such matters. We can not agree with counsel that the question is simply one of identity, for it is settled by the uncontradicted testimony of Wallace, Kennedy's confederate, that Kennedy was nearest him when constable Anderson arrested him, and Kennedy's declarations to the Cincinnati policeman tend to show that he was in Greensburg on that day. As Kennedy was with Wallace in the depredations of that day, as he attempted to rescue the latter from arrest, and as he was closely pursued by Baker and Woodfill, there can be but little, if any, doubt that he it was who fired the fatal shot; but when we add to this evidence the testimony of the great number of witnesses who identify—some of them in very positive terms—the appellant as the man who did the shooting, the conviction that he slew Baker is irresistible. If this be so he was justly found guilty of murder.

Judgment affirmed.

Filed April 13, 1885; petition for a rehearing overruled June 18, 1886.