[No. 1719.  Decided July 3, 1895.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY CRAEMER, *Appellant*.

PROSECUTION FOR MURDER — CONTINUANCE — EVIDENCE — OBJECTIONS
TO — SUFFICIENCY OF EVIDENCE.

Due diligence in procuring the attendance of a witness is not established by a showing that the defendant had been in the company of the witness on the day before his arrest upon the crime charged, that he knew of the migratory habits of the witness and that he had no fixed abode, that a short time before the trial letters had been addressed to him at the locality where last seen and to another point to which it was supposed he had gone, and that a subpœna had been issued to the sheriff of the county in which he was presumed to be, but without any definite direction as to where the witness could be found.

Objections to the reception of evidence cannot be urged on appeal unless first raised in the court below.

On a trial for the murder of a woman, evidence of the killing of her infant child is admissible, where the two homicides were committed at the same time and place, and by the same instrument.

Where the theory of the state in a prosecution for murder is that robbery was the motive, testimony is admissible to show the presence of defendant in the bushes near deceased's residence some thirteen days before the murder, and the finding of defendant's revolver upon the premises of deceased some eighteen days after the crime.

The denial of an adjournment of a trial, at the close of the evidence, for the purpose of securing the testimony of a witness of whom counsel had just been advised is not erroneous, when neither the name of the witness, his residence, nor the materiality of the proposed testimony is made to appear.

A verdict of murder in the first degree is sufficiently sustained by evidence showing that a murder had been committed and a house robbed; that defendant was seen in the bushes less than an hour before its commission, as well as some days prior, watching the house; that part of the handle of the hammer with which the homicide had been done, and most of the stolen money, was found on his premises; that he had been in straitened circumstances, but had given his wife some money on the day of the homicide, claiming it

as a portion of a payment made him on that day by a certain person, whose testimony was not produced at the trial; and that an *alibi* set up by him was not clearly established.

*Appeal from Superior Court, King County.*

*Daniel T. Cross,* and *Relfe & McCutcheon,* for appellant.

*A. W. Hastie,* Prosecuting Attorney, and *W. W. Wilshire,* for The State.

The opinion of the court was delivered by

GORDON, J.—Appellant, Henry Craemer, was convicted, in the superior court of King county, of murder in the first degree, and sentenced to death. From the judgment of conviction and an order denying his motion for a new trial he has appealed.

The record discloses that appellant was arrested on August 14, 1894; on August 17, 1894, he was taken before the committing magistrate for the purpose of a preliminary examination; that, agreeably to the right conferred by statute in such cases, he waived examination and was committed without bail; that on August 25, 1894, he was arraigned in the superior court upon information filed therein charging him with murder in the first degree for the killing of Philipina Mueller on August 13, 1894; that to the crime so charged he entered his plea of "not guilty," and the court thereupon fixed September 7, 1894, as the time for trial. It further appears that from the time of his arrest he was attended by counsel.

The alleged errors relied upon for a reversal of the conviction will be considered in the order in which they appear in appellant's brief. The first error assigned is the overruling of the motion by appellant for a continuance. This motion was based on the affida-

vits of himself and Mary Craemer, his wife, and N. Soderberg, his attorney. The continuance was sought for the alleged purpose of securing the testimony of one Jack Quincy, by whom appellant in his affidavit stated that he could show that he (appellant) went to Tacoma (distant some thirty miles from the scene of the killing) on the afternoon of the day of the alleged murder, to meet said Quincy; that said Quincy and appellant spent a portion of the afternoon of said day in Tacoma, and that during said time Quincy paid appellant the sum of $35; that said Quincy was a miner with no fixed place of abode, and was at the time when said affidavit was made supposed to be absent somewhere in the Cascade mountains in the neighborhood of Monte Cristo, in Snohomish county. The affidavit of Soderberg was to the effect that some seven days before the trial he caused two letters to be addressed to the said Quincy, one mailed to Tacoma, Washington, and the other to Monte Cristo; that four days later he caused a subpœna to be issued for said Quincy and placed the same in the hands of the sheriff of Snohomish county for service, without any definite direction as to where said alleged witness could be found. This, in brief, constituted the showing made for a continuance, and we think that it failed to meet the requirements of the statute respecting diligence. The migratory habits of Quincy being well known to appellant, the necessity of locating and keeping him located in order to secure his testimony at the trial was a matter that due diligence required of him and his counsel. Accused of this crime within a few hours after its alleged commission, and within less than one day from the time when he claims to have been in the company of Quincy, he apparently made no effort to secure his attendance, or to keep advised of his wanderings. In

this connection we may add that the affidavits generate a doubt, which is strengthened by the circumstances established upon the trial, as to the actual existence of the so-called Quincy; but, be that as it may, we do not think that the appellant used such reasonable means as were within his power to secure the attendance of the so-called Quincy, and the motion for a continuance was properly denied.

It appears from the evidence that the infant child of the deceased was murdered at the same time and evidently by the same hand that destroyed the mother's life, and it is next contended that the court erred in admitting evidence of the killing of the babe. The general rule is that, in the trial of a defendant for a specific offense, evidence tending to show the commission of other distinct offenses is inadmissible, but this general rule admits of many exceptions. One of these exceptions is that where two crimes are connected both may be proved. *Kennedy v. State*, 107 Ind. 144 (57 Am. Rep. 99, 6 N. E. 305). Here the two homicides were so intimately connected with regard to time, place, circumstances and the means employed to effect death, that proof of the killing of the babe was necessarily involved in a complete description of the offense charged against the prisoner, and constituted a circumstance in the history of the crime charged, incapable of being separated from it in describing the condition and appearance of the mother and the premises where the killing occurred. But, aside from this, it appears from the record that no objection of any character was made to the reception of this evidence at the trial, and the settled practice does not admit of its being urged for the first time upon appeal. *Sears v. Seattle, etc., Street Ry. Co.*, 6 Wash., 227 (33 Pac. 389, 1081); *People v. Baird*, 105 Cal. 126 (38 Pac. 633).

The court did not err in admitting the testimony of Mrs. Smith and Laura Cushman, witnesses for the state, who testified to having seen the prisoner in the brier bushes adjoining the deceased's residence thirteen days prior to the homicide. The theory of the state was that robbery was the motive leading to the murder, and the presence of the appellant at that time was a circumstance which we think the jury was entitled to consider. Nor was it error to permit the witness McCormack to testify to finding a revolver upon the premises of the deceased some eighteen days after the homicide. This revolver was identified as the property of the appellant, and its discovery was also a circumstance to be weighed by the jury. The testimony on the part of the state as to the amount and character of the money found in the possession of the wife of appellant, if not strictly competent, was not, we feel confident, prejudicial to the appellant.

At the close of the evidence at the trial, appellant's counsel requested an adjournment for the purpose of calling a witness, concerning whose testimony, it was stated to the court, counsel had just been advised. The application was denied, and this refusal of the court is made the ground for specific assignment of error. If the record disclosed that there was in fact a person whose testimony could have been secured upon reasonable adjournment had, and that such testimony was material to appellant's case, we should not hesitate to say, considering the great importance of the issue, that the refusal of the court to grant a reasonable continuance would be error; but no such condition is presented by the record. The name of the witness is not given, nor his residence stated, nor is the materiality of the proposed testimony made to appear. We cannot say from the record that the cause of the ap-

pellant was prejudiced by the refusal of the court to grant the adjournment.

We think the charge of the learned judge fully covered the different phases of the case as presented by the evidence, and correctly stated the law.

The last proposition contended for in the brief of appellant is, that " the evidence taken as a whole is insufficient to support the verdict rendered." The killing of the deceased occurred at her home in the city of Seattle, between seven and eight o'clock on the evening of August 13, 1894. This home consisted of a small wooden house containing five rooms, three of which were located on the first floor and occupied by the deceased, her husband and three children, the youngest of whom, a baby, was killed at the same time and place and evidently by the same hand and by the same means made use of to effect the mother's death. The upper rooms in the home were occupied by two lodgers. The deceased was found dead by her children and some of the neighbors, about the hour of eight o'clock, p. m. She was lying on the floor in the middle room. There was a compound fracture of the nose and compound fracture of the maxillary bone on the left side; her skull was fractured in front of the left ear, and there were other cuts and bruises on her face, the cause of death being assigned to the fracture of the skull with hemorrhage. The baby had a fracture of the skull near the angle of the orbit on the left side, and was found lying on the bed in the same room with the mother. The character of the wounds was such as to indicate clearly that they were made by some blunt instrument. Upon the window-sill in the front room downstairs was found a carpenter's claw-hammer smeared with blood, which was evidently the weapon with which both mother and child were killed.

A towel bearing bloody finger marks was found in the kitchen. A trunk of the deceased had been broken open and the sum of two hundred and forty dollars in gold coin stolen therefrom; the other contents were scattered about the room in confusion. The rooms upstairs had also been rifled, clearly and unmistakably indicating that robbery was the motive which actuated the murder. An attempt had been made to fire the premises, and the body of the mother had been placed upon some bed clothing in the center of the middle room,— the clothing saturated with kerosene extracted from a lamp, and books, papers and chairs piled thereon.

It appears from the evidence that appellant occupied with his family a house in the neighborhood of the deceased. The husband of the deceased and appellant were for a short period fellow-workmen in a brewery, but at the time of the homicide and for some months previous thereto appellant had been out of employment and was in straitened circumstances. A piece had been sawed from the handle of the hammer found upon the premises where the killing was committed, as above stated, evidently for the purpose of shortening it and making it of more convenient size for carrying in concealment. This hammer was identified as the property of the appellant, and the missing end was also found on the day following the murder, in a shed upon the premises of the appellant. Upon further search of the premises the sum of $200 in gold coin was found in a miter box upon a beam of the said shed.

On the night of the murder appellant had given his wife some $29, which sum, in connection with the amount so found and other items expended by the prisoner prior to his arrest and subsequent to the killing, aggregated about the amount that was stolen from

the premises of the deceased. Appellant disclaimed any knowledge of the money so found upon his premises, and contended that the money which he had given his wife was a part of the proceeds of the sum of $35 which had been paid him by the so-called Quincy, as set out in his affidavit for continuance heretofore referred to.

Harry Gyer, a witness for the state, testified to having seen appellant at about a quarter to seven of the evening of the day of the killing, and at that time appellant was standing in the brush at a point about two hundred feet from the home of the deceased; that he was then looking towards the said house, was partially concealed by the brush and quite motionless. As already adverted to, the appellant had been seen in that vicinity some thirteen days prior to the killing, under circumstances which, we think, create a degree of suspicion, but at that time he was aware that his presence had been discovered. The husband of the deceased and the two lodgers referred to had left home shortly before or about seven o'clock upon the evening of the homicide and gone into the city to attend a labor meeting, at which they remained until apprised of the homicide at about the hour of half after nine.

Appellant, prior and subsequent to the time of his arrest, and upon trial, insisted that upon the day of the homicide he had taken a steamboat at about the noon hour for Tacoma, where he arrived about two o'clock, and that he remained there until about seven, p. m., returning to Seattle on the steamer "Flyer," and arriving at the latter place about 9:30, p. m., or sometime after the homicide had been committed. It appeared that there was considerable music on the boat upon its return trip, but, being questioned concerning it, appellant stated that he heard none of it;

and upon being questioned concerning the presence upon the boat of different persons with whom he was acquainted, and who were shown to have been passengers and employes thereupon, he was unable to state that he had seen any of them.

It would be neither practicable nor profitable in this opinion to fully review the evidence. The record is very voluminous and abounds in circumstances which convince the mind of the appellant's guilt. From a full examination of the case we think the evidence is amply sufficient to sustain the verdict and that the record discloses no error requiring a reversal.

The judgment of conviction is affirmed, and the case remanded to the lower court with directions to proceed to appoint a day for the carrying of its sentence into effect according to law.

HOYT, C. J., ANDERS, DUNBAR and SCOTT, JJ., concur.