[No. 7517. Decided November 10, 1908.]

# THE STATE OF WASHINGTON, *Respondent*, v. FRANK O. BRIDGHAM, *Appellant*.[1]

HOMICIDE—EVIDENCE—DYING DECLARATIONS. A dying declaration is admissible, although it did not contain the express declaration that deceased believed she was about to die and she did not actually so state, where it appears from other evidence that she believed she was *in extremis*, and did die from the illness from which she was suffering as the direct result of the injury.

SAME—EXTREMIS. It sufficiently appears that a dying declaration was made *in extremis*, where the deceased was informed by a physician that the wound was mortal, that she was rational and realized the fact and said that she did not think that she could get well, and gave directions as to her burial and the care of her children.

SAME—CONTENTS—PRIOR THREATS—INSTRUCTIONS. It is not error to admit in evidence a dying declaration which contained a statement of prior threats, where the jury were instructed not to consider any reference therein to threats made by the defendant.

EVIDENCE—OBJECTIONS—SUFFICIENCY. An objection to a coroner's record of an inquest because it was not complete does not raise the question of its relevancy or materiality.

SAME—TRIAL—OBJECTIONS. A stipulation at a trial that exceptions shall be considered taken to all adverse rulings, does not obviate the necessity of necessary objections at proper times.

APPEAL—PRESERVATION OF GROUNDS—OBJECTIONS. Objections to the evidence cannot be first raised on appeal.

. HOMICIDE—PREMEDITATED MALICE—DELIBERATION — INSTRUCTIONS. An instruction as to premeditated malice that there need be "no particular" length of time between the formation of the intent to kill and the killing is not objectionable as failing to recognize that there must be deliberation and time therefor.

CRIMINAL LAW—EVIDENCE—SANITY—OPINIONS OF EXPERT. In a prosecution for homicide, committed by defendant after he had been drinking intoxicating liquor, opinions of a physician testifying as an expert, as to the probable effect thereof upon his mind, are admissible upon an issue as to defendant's sanity.

[1]Reported in 97 Pac. 1096.

HOMICIDE — DELIBERATION — EVIDENCE — SUFFICIENCY.    There is
sufficient evidence of deliberation in the murder of defendant's wife,
where it appeared that they had quarreled the day before and on the
morning of the shooting, and that they separated and defendant pro-
cured a revolver and returned, making a trip of two miles, drew his
revolver while holding her, and shot her while she was running
away.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE.    A new trial for newly
discovered evidence is properly denied where the same is merely
cumulative.

INDICTMENT AND INFORMATION—HOMICIDE—CHARGE OF KILLING—
SUFFICIENCY.    An information for murder in the first degree suffi-
ciently charges that the accused killed the deceased and the means
by which it was done, where it alleges that he shot her by the use of
a revolver pistol, producing a mortal wound from which she died
the next day.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered March 25, 1908, upon a trial and
conviction of murder.    Affirmed.

*Pruyn & Felkner*, for appellant.

*U. E. Harmon*, for respondent.

HADLEY, C. J.—The defendant was charged with having
committed the crime of murder in the first degree, by shooting
and mortally wounding Lula Bridgham, who was his wife.
The defense of not guilty, including a claim of insanity at
the time of the shooting, was interposed.    The jury returned
a verdict of guilty of murder in the first degree.    The court
entered judgment and sentence that the defendant shall suffer
the penalty of death, and he has appealed to this court.

The first error assigned is that the court admitted a written
statement as the dying declaration of the deceased.    It is
argued that the statement should not have been admitted for
the reason that there was nothing upon its face showing
that the deceased realized at the time that she was about to
die or that her death was imminent and impending.    The
further argument is made that the evidence introduced in

connection with the statement did not show that the deceased said she was about to die or that her death was imminent and impending. The standard required for the admissibility of the declaration is that the declarant should have believed that she was about to die, that she made the declaration under the belief that she would not recover, and that she did die of the illness from which she was suffering as the direct and proximate result of the original injury which the declaration tended to illustrate. *State v. Power*, 24 Wash. 34, 63 Pac. 1112. It was not necessary that the written statement should contain the express declaration that the declarant believed she was about to die, and it was not necessary to show by other testimony that she actually used the words. It was sufficient to show, either by the statement itself or by other credible testimony, such statements or circumstances as would convince a reasonable mind that the declarant believed at the time that she was *in extremis*. The testimony showed that the deceased was informed by a physician that her wound was mortal and that she could not live; that she was rational and realized she could not live; that she said she did not think she could get well, and she expressed the wish that her son would look out for her three babies; that she said her daughter's ashes were in a jar in her trunk and she wanted them buried with her. We think it was clearly shown that the declarant made the statement under the belief that she was about to die, and her death soon followed.

The declaration contained a statement of prior threats, and appellant contends that he was prejudiced thereby. He cites *State v. Moody*, 18 Wash. 165, 51 Pac. 365, to sustain this contention. In that case the dying declaration contained a statement of previous threats, and it was contended that these should have been excluded. The court, however, admitted the whole statement and gave no instruction with respect to disregarding the subject of prior threats as based upon the statement. This court said: "We think the court erred in not instructing the jury that this part or portion of the dying

declaration should be disregarded." In the case at bar the court directly covered that point in closing its instruction upon the subject of the dying declaration, as follows:

"Furthermore such declarations are only admitted to prove the actual killing and the manner of the killing so that if you consider this statement at all you will not in any manner consider any statements therein in reference to previous threats made by the defendant, nor will you consider any other statements therein except that which relates to the actual killing at the time and the manner in which the killing was done."

We do not find that the court erred in admitting the dying declaration, in view of its instruction upon that subject.

It is insisted that the court erred in admitting in the evidence the record of the inquest before the coroner's jury. We find nothing in this record showing that the coroner's record was read in evidence before the jury. Other written evidence is shown to have been read, but it does not so appear as to the coroner's record. The state's counsel asserts that it was not read, and that the record is for that reason silent upon the subject. Assuming, however, from the fact that it was formally admitted by the court, that it was also read to the jury, we can find no sufficient objection to it. The objection made by the counsel who tried the cause was as follows: "We object because it shows on the face of it that it is not a complete record." There was no objection to its relevancy or materiality. We think it appeared that the record was sufficiently complete to meet appellant's objection. Counsel who conducted this appeal, but who did not try the cause below, insist that there was an agreement at the trial, sanctioned by the court, to the effect that a general objection should be understood as lodged against all the evidence. The stipulation to which counsel refer appears in the record as follows:

"Mr. Harmon: Note an exception. In order to save time in taking exceptions, at all times whenever there is an adverse ruling of the court, the counsel might have an understanding between themselves that in that case that an exception be

noted.    We think that is usually the rule.    Court: Very good."

It will be seen that the above related exclusively to the matter of avoiding the announcement of an exception each time there was an adverse ruling upon an objection; but it did not relieve counsel from making the necessary objections at proper times.    Otherwise there could have been no adverse rulings as the basis for the understood objections.    The court committed no error in the matter of the coroner's record. Other objections cannot be raised for the first time on appeal. *State v..Craemer,* 12 Wash. 217, 40 Pac. 944; *State v. Owens,* 15 Wash. 468, 46 Pac. 1039; *State v. Yourex,* 30 Wash. 611, 71 Pac. 203.

Objection is made to the following instruction:

"Premeditated malice is where the intention to unlawfully take life is deliberately formed in the mind, and that determination meditated upon before the fatal stroke is given. There need be no particular length of time between the formation of the intention to kill and the killing.    It is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer."

Appellant's argument is that the instruction does not sufficiently observe the necessity for time for deliberation and premeditation as an element of murder in the first degree, and the case of *State v. Rutten,* 13 Wash. 203, 43 Pac. 30, is cited.    The criticism of the instruction in that case was that the court told the jury there need be no appreciable space of time between the intention to kill and the act of killing, and that in deliberation, the intent to kill and the act of killing may be as instantaneous as the successive thoughts of the mind.    It was believed that such an instruction did away with the idea of deliberation.    The court interpreted the instruction to mean that an intention to kill may come instantaneously to the mind, and that it may be instantaneously carried into execution at the same moment, thus connecting the idea of deliberation directly with the act of killing.    In

*State v. Straub,* 16 Wash. 111, 47 Pac. 227, the court made it clear that an instruction which does not so directly connect the two is not objectionable. In that case the trial court in its instruction said:

"Premeditation may be as quick as thought in the mind of man;" and this court said that "any conviction or intention that enters into the mind of man enters with the rapidity of thought;" but held that the instruction did not say that the intention might be formed and its execution carried out in the same or successive instants, as was believed to be true of the instruction in *State v. Rutten, supra.* We think the instruction in the case at bar amply recognizes that there must be deliberation and time therefor, but that no definite standard as to lapse of time is necessary. In using the expression, "There need be no particular length of time," the words "no particular" were used in the explanatory sense that no fixed or definite time is necessary, it being only necessary that there must be actual time for deliberation.

Errors are assigned as to certain questions which the court permitted a witness to answer, on the ground that they called for pure opinion testimony. This witness was, however, being examined as a physician and as an expert touching the defense of insanity, and his opinion became proper evidence. There was evidence to the effect that appellant had been drinking intoxicating liquor, and the questions related to the probable effect thereof upon his mind. We find no prejudicial error in this regard.

It is insisted that the motion for new trial should have been granted for the reason that there was no specific evidence of premeditation or deliberation. It is unnecessary to extensively set forth the evidence here. It is sufficient to say that we think there was an abundance of evidence upon that subject for the jury. The two had quarreled the day before the shooting, and had quarreled and separated in the morning of the day of the shooting. Appellant went to the house of his son-in-law and got the revolver with which he killed his wife. He after-

wards made a trip of two miles after dark and went to the house where his wife was. After inducing her to put down the baby which she was holding, he asked her to go outside and talk with him. She declined to do so. He caught her around the waist, still insisting that she should go out with him, and while holding her he reached for the revolver. She succeeded in breaking away from him, and as she ran he shot her. Further comments upon this subject we think are not necessary.

We think the contention that the court should have granted a new trial on account of newly discovered evidence, is not well taken. The proposed new evidence is merely cumulative upon the question of appellant's insanity, and under the decision of *State v. Underwood*, 35 Wash. 558, 77 Pac. 863, the motion for new trial on that ground was properly denied.

It is next urged that the court should have sustained appellant's motion in arrest of judgment, on the ground that the information is not sufficient to sustain a verdict of murder in the first degree. Omitting the formal commencement and conclusion, the information is as follows:

"Comes now U. E. Harmon, prosecuting attorney for the said Lewis county, state of Washington, the said superior court of said Lewis county being in session and the grand jury for said county not being in session, and now here said prosecuting attorney gives the said superior court to understand and to be informed by this information that the above named Frank O. Bridgham is guilty of the crime of murder in the first degree committed as follows: The said Frank O. Bridgham in said Lewis county, state of Washington, on to wit: the 2nd day of November, A. D. 1907, unlawfully, feloniously, purposely and of his deliberate and premeditated malice and with intent to kill, did shoot Lula Bridgham with a revolver pistol, then and there held in his hand, and then and there unlawfully, feloniously, purposely and of his deliberate and premeditated malice, by shooting with intent to kill as aforesaid did mortally wound her the said Lula Bridgham, from which mortal wounding the said Lula Bridgham, on the third day of November, 1907, at Centralia, Lewis county, state of Washington, died."

It is argued that the information, neither directly charges that the accused killed the deceased, nor states the means by which the killing was done. Surely no one who understands the English language can read the information and fail to know that the accused is charged with mortally wounding the deceased, and that with deliberate and premeditated malice, with intent to kill, he shot her by the use of a revolver pistol, producing such mortal wound, from which she died. More is not required under our law, and to require greater technical particularity would sweep aside the sensible tendency to liberality in modern criminal jurisprudence whereby the substance and not the form is more highly regarded.

We have discussed all the errors assigned. We think the appellant was given a fair and impartial trial, and that the record shows no prejudicial error.

The judgment is therefore affirmed.

RUDKIN, CROW, DUNBAR, MOUNT, and ROOT, JJ., concur. FULLERTON, J., took no part.