CANNON v. CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 19,499. Filed Nov. 26, 1901. Rehearing denied Feb. 27, 1902.]

RAILROADS.—*Use of Right of Way by Foot-Passengers.*—A user of a part of a railroad right of way by the public, as a highway for foot-passengers, where such use was neither exclusive nor adverse, would not prove an implied dedication or a prescriptive right, no matter how long continued. *p. 685.*

RAILROADS.—*Injury to Person on Track.*—A person injured while using a foot-path maintained by a railroad company along its right of way, but not dedicated to the public, cannot maintain an action for an injury caused by the company's failure to have a watchman, or its failure to operate gates or to give warning of approaching trains, since the company owes such person no duty except to refrain from wilfully injuring him. *pp. 685-689.*

From Floyd Circuit Court; *W. C. Utz,* Judge.

Action by Mamie G. Cannon against the Cleveland, etc., R. Co. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*E. B. Stotsenburg, J. H. Weathers, G. W. Galvin* and *W. A. Reading,* for appellant.

*J. T. Dye, L. J. Hackney* and *M. Z. Stannard,* for appellee.

BAKER, J.—A demurrer for want of facts was sustained to appellant's complaint, in which she demanded judgment for $10,000 for personal injuries. She refused to plead further and judgment for appellee was entered. The ruling on the demurrer is assigned as error.

The material parts of the complaint are these: "That on March 21, 1896, the defendant was, and for more than six months previous thereto had been, engaged in operating a railroad in and through Delaware county, Indiana, with railroad tracks upon and over which locomotives and cars were run and propelled by steam; that the railroad passed through the city of Muncie, in Delaware county, and was constructed and operated in and through a thickly settled part of said city, where numerous foot-passengers were compelled to walk on, along, over and across said railroad tracks; that for the convenience of said railroad company and to enable it better to carry on its business, it had constructed its said railroad, on, over and across certain lots in said city of Muncie, owned by said defendant, and had constructed an open roadway five feet in width extending from Mulberry street to Walnut street; that, although the said

strip of land so opened and used by said defendant was the
private property of said company, yet with knowledge and
consent of defendant, the same was, and for more than six
months previous to the happening of the grievances herein-
after mentioned had been, continually used by the public, in
common with said defendant, as a highway for foot-passen-
gers, and at all hours of the day, the said way was so used;
that on March 21, 1896, the plaintiff was carefully and
rightfully passing on, over and across said roadway to the
place where she was employed; that before entering upon
said strip of ground she looked and listened in both direc-
tions but did not and could not hear or see any locomotive or
car upon said strip or approaching the same; that after said
plaintiff entered upon said strip and continually while she
was traveling thereon, until the time of the grievances here-
inafter mentioned, she looked and listened in both direc-
tions for the approach of a train, but by reason of the curve
in the track of said railroad she could not hear or see any
locomotive upon said strip or approaching the same; that
while said plaintiff was then and there proceeding along said
way in a careful manner, the defendant so negligently oper-
ated its road that she was wrongfully and negligently run
against and permanently injured; that no bell was rung, no
whistle was blown, nor was any warning of any kind given
of the approach of said locomotive, nor was any watchman,
gate, fence or barrier of any kind on, upon or across said
strip of ground to notify persons using the same of the ap-
proach of a locomotive or train of cars; and that said loco-
motive approached said plaintiff from behind and going in
the same direction she was, so quietly and so quickly that
she had no knowledge of its approach until she was struck
by it and knocked down; and plaintiff says that said acci-
dent and injury were caused solely by the wrongful negli-
gence of the defendant and without any fault on the part of
the plaintiff."

It appears that the alleged "highway for foot-passengers"

was upon appellee's premises and extended longitudinally along and upon the tracks from one street to another. It was constructed by appellee for its own purposes and convenience. The public, in common with appellee's servants, used it as a footway. Appellee's servants presumably used it in the performance of their duties. The public used it for their own convenience as a short cut between streets. The way was used by the public with appellee's knowledge. The "consent", averred in the complaint, taking the intendments most strongly against the pleader, must be held to be only that consent which is implied from the public's use without appellee's express objection after knowledge of the use,—because no broader "consent" is directly alleged. Appellant did not go upon the premises to transact any business with appellee. She went purely for her own convenience, without invitation or inducement from appellee. There is no averment that the engineer saw appellant and thereafter negligently ran the engine upon her. The right to recover is predicated upon appellee's failure to have watchmen and barricades and to blow whistles and ring bells to keep appellant out of danger, without knowing that she was on the premises.

The basis of the action is negligence. It was therefore incumbent upon appellant to show that appellee owed her the duty to exercise the particular care the omission of which is alleged to have been the direct cause of the injury. Do the facts make out such a case?

It is not pretended that appellee expressly dedicated this longitudinal strip of its tracks to the public for a highway. The public's user of it was neither exclusive nor adverse; and, no matter how long continued, would not prove either an implied dedication or a prescriptive right. *Baltimore, etc., R. Co.* v. *City of Seymour,* 154 Ind. 17. The first stranger took upon himself the risk of all injuries short of those wilfully inflicted. So did the thousandth stranger, unless it be held that appellee, although there was not the

slightest impairment of its title and right of possession, was compelled to treat its own private land as a public highway where it was not. The first stranger did not have permission to travel along the tracks; the thousandth did have. But permission to do what? To do exactly what the first did without permission, to travel along the tracks, assuming all hazards except wilfulness. With respect to the last stranger, no more than to the first, could appellee be guilty of negligence, for to neither did appellee owe the duty of exercising care to keep him out of danger.

The doctrine of *Lingenfelter* v. *Baltimore, etc., R. Co.,* 154 Ind. 49, is applicable and controlling. The public, with the company's acquiescence, had created and used a foot-path through the railroad yards. Near the path was an ash-pit. Appellant charged that the company negligently obstructed the path by leaving a car standing directly across it, and that appellant in the night-time was misled by the position of the car and fell into the pit. It thus appears that negligence was claimed both with respect to the condition of the premises and the operation of the railroad. The court said: "Appellee, under the circumstances in this case, as the authorities affirm, owed no duty to appellant to refrain from obstructing the path by placing the car, as it did, upon its tracks situated on its own grounds, which were used in connection with the particular business in which it was engaged. Neither did the duty rest upon it, under the circumstances, to place signals of danger at or near the pit in order that a mere licensee, like appellant, passing over these grounds in the night-time, might be warned, and thereby avoid falling into such pit."

The facts in this case are quite similar to those in *Cleveland, etc., R. Co.* v. *Tartt,* 64 Fed. 823, 12 C. C. A. 618: "The decedent, accompanied by his son, was, when killed, walking on or dangerously near to the track of the company. He was not on or near any highway or street crossing. He was traveling along the right of way for his own convenience

without any invitation, express or implied, and with knowledge of the danger to life and limb from passing trains. It is true that he was killed while attempting to rescue his son from impending peril, but he had, by his own voluntary act, brought his son into a situation of danger, which gave rise to the peril. The only excuse offered for such conduct was that the defendant had suffered other people to travel along its right of way without interference or objection. He was traveling upon the defendant's right of way, not for any purpose of business connected with the railroad, but for his own convenience, as a footway, in reaching the village of Venice. The right of way was the exclusive property of the defendant, upon which no unauthorized person had the right to be for any purpose. It was a place of known danger, and there was nothing to exempt the decedent from the character of a wrongdoer and trespasser in traveling along the right of way further than the implied consent of the defendant arising from its failure to interfere with the previous like practice by others. But because the defendant did not enforce its rights, and warn people off its premises, no right was thereby acquired to use its roadbed as a place for public travel. At most, it was used by sufferance, which amounted to no more than a mere naked license, and imposed no obligation on the part of the owner to provide against the danger of accident. The person who used the right of way for his convenience went there at his own risk, and enjoyed the implied license, with its attendant perils. *Crane Elevator Co.* v. *Lippert,* 24 U. S. App. 176, 11 C. C. A. 521, 63 Fed. 942. The decedent, then, stood in no more favorable position than that of a wrongdoer or trespasser. He was at the time of the accident in the exercise of no legal right, and at most was in the enjoyment of a naked license implied from the previous use of the right of way by others; and the rights and obligations of the decedent and the company are to be measured as in the case of parties thus situated. Where both parties are equally in the position of right which is enjoyed by each in-

dependently of the other, the plaintiff is only bound to show that the injury was occasioned by the negligence of the defendant, and that he exercised ordinary care to avoid it. But where the plaintiff is a wrongdoer or trespasser, or is in the enjoyment of a naked license for his own convenience, without any invitation, express or implied, from the owner of the premises, he cannot maintain an action for an injury without averring and proving that the injury was wilfully inflicted, or that it was caused by negligence so gross as to authorize the inference of wilfulness."

We approve the statement of the rule in 3 Elliott on Railroads §1250: "It is held by some of the courts, however, that if a railroad company licenses or acquiesces in the use of its track or premises by others it must exercise reasonable care not only to avoid injuring them after they are discovered to be in danger but also to keep a careful lookout to discover and avoid injury to all who may be expected to be upon their right of way or premises. This rule, especially when applied in favor of those who walk along a railroad track between crossings, seems to us to be not only contrary to the weight of authority but also impracticable and in violation of the true principle that should govern such cases. If it be true, as generally conceded, that a licensee takes his license subject to the 'concomitant risks and perils,' he must surely take it subject to the use of the road in the manner in which it was used at the time the license was granted, that is, subject to the running of trains in the ordinary manner without any special reference to him, and he occupies, therefore, to this extent, substantially the position of a trespasser. In other words, the company owes him no duty of active vigilance to specially look out for and protect him, for he must know that his license is subject to all risks incident to the use of the track by the company in the same manner in which it was used at the time the license was granted and that the company assumes no new obligation or duty. Indeed, it seems to us that he is bound to know that a railroad company has no power to license the use of its tracks in such a

manner as to interfere with its duties to the public as a common carrier. If it owes a duty to every bare licensee to run its trains with reference to him, to look out for him, to signal, to slow up and, perhaps, to stop wherever it has reason to expect him, it can do little else, its trains can not be on time and the traveling public must suffer. It certainly is not obliged to patrol its tracks from one end to the other to keep off trespassers and to prevent those who use it longitudinally from claiming a license on the ground of acquiescence. It seems to us, therefore, that the only duty which it owes to such persons, whether they are trespassers or bare licensees, is not wilfully or wantonly to injure them but to use reasonable care to avoid injury to them after their danger is discovered. It seems to us also that some of the courts beg the question when they say that the company must keep a lookout and use care to discover and protect persons on the track where they may be expected, although not at a crossing or the like. Is the company bound to expect them at any such place, and to run its trains with reference to them? Is not the assumption that such duty rests upon the company an undue assumption? The just and reasonable assumption would seem to be that they will not be on the track when trains are passing or, if they are, that, as they take their license subject to 'concomitant perils,' they will look out for their own safety without special warning or change by the company in the manner of using its road, and that it may act on this assumption until it discovers their danger."

Expressions in some of our cases, as in *Louisville, etc., R. Co. v. Phillips,* 112 Ind. 59 (2 Am. St. 155), on pp. 66, 67, which hold or seem to hold a contrary doctrine, are disapproved.

As no actionable negligence is disclosed by the complaint, it is unnecessary to consider the quality of appellant's care to save herself from injury.

Judgment affirmed.

Dowling, J., did not participate.