## BURNS ET AL. *v.* STATE OF INDIANA.

[No. 24,027. Filed October 25, 1922.]

1. CRIMINAL LAW.—*New Trial.—Grounds.—Ruling on Motion for Change of Venue.—Statutes.*—Under §2158, cl. 1, Burns 1914, Acts 1905 p. 584, §282, error in the ruling of the trial court upon a motion for change of venue or a motion to remand the cause after the venue has been changed, is cause for a new trial, and may not be separately assigned as error. p. 430.

2. JUDGES.—*Special Judge.—Powers.—Statutes.*—Where defendant filed verified objections to the presiding judge and thereby caused him to be superseded by a special judge, the latter had only such power, under §2075 Burns' Supp. 1921, Acts 1915 p. 30, as was vested in the regular judge, and, after a change of venue to another circuit court had been granted by the special judge, he was without further jurisdiction and

could not follow the cause and preside at the trial in the court to which the case was sent. p. 431.

3. CRIMINAL LAW.—*Change of Venue.—Refusal.—Abuse of Discretion.*—In a prosecution for murder, the refusal of the trial court, on application of defendant for change of venue, to send the cause to the county requested by defendant, *held* not an abuse of discretion. p. 432.

4. CRIMINAL LAW.—*Application for Change of Venue.—Determination of Place of Trial.—Discretion of Judge.*—The judge to whom an application for a change of venue is presented exercises a judicial discretion in determining to what county a cause shall be sent, and his decision will only be set aside for manifest abuse of discretion. p. 432.

5. CRIMINAL LAW.—*Second Change of Venue.—Grounds.*—The mere fact that a murder had occurred in the county to which a change of venue was ordered was not sufficient to entitle defendants, indicted for murder, to a trial in another county. p. 432.

6. HOMICIDE.—*Murder in First Degree.—Evidence.—Sufficiency.*—In a prosecution for murder committed during the progress of a robbery, evidence *held* sufficient to support a verdict finding each defendant guilty of murder in the first degree, and fixing punishment at life imprisonment, under §2235 Burns 1914, Acts 1905 p. 584, §347. p. 435.

7. HOMICIDE.—*Instructions.—Applicability to Evidence.—Killing in Making Escape after Robbery.*—In a prosecution for murder committed during the progress of an attempted robbery of a bank, an instruction that, if the attempted escape by defendants was part of a common plan and purpose formed when conspiring to commit the robbery, that all defendants or one of them should shoot and kill, if necessary, any person who might attempt to prevent their escape, and if the murder charged was committed by one of them in carrying out such common plan and purpose, all engaged in carrying out that purpose would be equally guilty with the defendant who did the killing, *held* applicable to the evidence. p. 435.

8. HOMICIDE.—*Instructions.—Killing in Making Escape after Attempted Robbery.—Guilt of Defendants.*—In a prosecution for murder committed during the progress of an attempted robbery of a bank, an instruction that, if the persons engaged in robbing the bank became frightened while so engaged and abandoned the robbery, and each endeavored to escape in his own way, and if the driver of the automobile and another were fleeing or attempting to flee in the automobile, when citizens shot at them, and one of them killed deceased under the belief that it was necessary in order to save themselves, the

defendants who did not kill deceased could not be held to have committed the murder on account of any agreement or conspiracy to rob the bank because any such conspiracy was at an end, *held* properly refused, in view of the evidence.　p. 436.

9.　HOMICIDE.—*Murder in First Degree.—Killing in Commission of Robbery.—Malice.—Intent.—Instructions.*—In a prosecution for murder committed during the progress of an attempted robbery of a bank, an instruction that, if deceased was shot and killed by one of the defendants while all were voluntarily engaging in the perpetration of a robbery, proof that the killing was done purposely and with premeditated malice was not essential to establish that all the defendants were guilty of murder in the first degree, was correct.　p. 438.

10.　HOMICIDE.—*Murder in Commission of Robbery.—Escape of Robbers.— Right of Citizen to Prevent.— Instructions.*— In a prosecution for murder committed during the progress of an attempted robbery of a bank, an instruction that, if deceased, a private citizen, was attempting to prevent the robbery or the escape of the robbers, he had the right, and it was his duty, to use necessary force and any reasonable, necessary means, even to the extent of taking the life of one or more of the robbers, to prevent the robbery or the escape of any of the robbers, and that it was his right and duty to arrest the robbers without a warrant, was not erroneous.　p. 438.

11.　HOMICIDE.—*Murder in Commission of Robbery.—Citizen Attempting to Prevent Escape of Robbers.—Instructions.*—In a prosecution for murder committed during the progress of an attempted robbery of a bank, an instruction that, if deceased, a private citizen, shot at two of the robbers in an automobile, or raised his gun to shoot at them, and in the exercise of good judgment, they honestly believed that he was about to shoot at them, and that they were in danger of death or serious bodily injury, the killing of such citizen would be justifiable homicide, was properly refused.　p. 438.

12.　HOMICIDE.—*Murder in Commission of Robbery.—Right to Resist Arrest.— Instructions.*— In a prosecution for murder committed during the progress of an attempted robbery of a bank, an instruction that an officer or other person attempting to arrest one believed to have committed a felony may use no more force than is necessary, and that the person sought to be arrested may forcibly resist arrest, even to the extent of killing his assailant, if in the exercise of honest judgment, he deems it necessary to save his life or to escape great bodily harm, was properly refused.　p. 438.

13.　CRIMINAL LAW.—*Instructions.—Repetitions.*—In a prosecution for murder committed during the progress of an attempted

robbery of a bank, the repetition in three successive instructions of the proposition that, if defendants were jointly engaged in the perpetration of a robbery pursuant to a conspiracy to rob, and one of them, while so engaged, shot and killed deceased, all defendants engaged in the robbery would be guilty of murder, was not prejudicial, where each instruction set forth a particular rule of law against the background of the proposition stated. p. 439.

From Kosciusko Circuit Court; *Lemuel W. Royse,* Judge.

Prosecution by the State of Indiana against Joe R. Burns and others. From a judgment of conviction, the defendants appeal. *Affirmed.*

*L. R. Stookey, Jas. F. Fardy, Clarence S. Darrow* and *William J. Reed,* for appellant.

*U. S. Lesh,* Attorney-General, *Mrs. Edward Franklin White* and *Harley A. Logan,* for the state.

EWBANK, J.—The four appellants were jointly indicted in Marshall county, Indiana, on the charge that on December 29, 1920, they unlawfully killed and murdered Jacob Russell Saine, by shooting him in the perpetration of a robbery, committed by forcibly and feloniously putting in fear the cashier and other employes of the State Exchange Bank of Culver, Indiana, and taking from them a sum of money. No question as to the sufficiency of the indictment is presented by appellant's brief. Appellants were convicted and after unsuccessfully moving for a new trial and in arrest of judgment perfected an appeal.

A ruling by the trial court upon a motion for a change of venue or a motion to remand the cause after the venue had been changed, if erroneous, is cause for a

1. new trial, under the first subdivision of §2158 Burns 1914, Acts 1905 p. 584, §282, and may not be separately assigned as error. *Walb* v. *Eshelman* (1911), 176 Ind. 253, 260, 94 N. E. 566; *Wilson* v. *John-*

*son* (1894), 145 Ind. 40, 42, 38 N. E. 38, 43 N. E. 930; Ewbank's Manual (2d ed.) §134.

The motion for a new trial specified as error sending the cause to Kosciusko county upon sustaining a motion to change the venue, refusing to send it to Starke county, overruling appellant's motion to modify the order granting such change so as to direct that it be sent to Starke county, the giving of certain instructions, the refusal to give certain others, and that the verdict is not sustained by sufficient evidence and is contrary to law.

The motion in arrest of judgment sought to question the jurisdiction of the Kosciusko Circuit Court presided over by the regular judge of that court, Hon.

2. Lemuel W. Royse, because Hon. Albert Ward, of the Miami Circuit Court, had been appointed as special judge, upon motion of appellants for a change of judge, before they asked and were granted a change from Marshall county. There is nothing in this point. By filing verified objections to the presiding judge in Marshall county, appellants caused him to be superseded by a special judge, who took his place, with all the power and jurisdiction which he had before possessed, and no more. Acts 1915 p. 30, §2075 Burns' Supp. 1921.

And upon the filing by appellants of a motion for a change of venue from the county, and the entry of an order by the special judge sustaining such change and sending the cause to another county having a different regular judge, the special judge had no more right to follow the cause and preside at the trial there than the regular judge of the Marshall Circuit Court would have had if the motion for a change of venue from the county had been presented to him. He would have had no jurisdiction after the venue was changed.

In their verified motion for a change of venue from Marshall county appellants stated that prejudice against

them also existed at Rochester, in Fulton county, but that Knox is only thirteen miles from Culver and connected with it by good gravel roads, and is easily accessible by rail from Culver, and that all the witnesses live either at Culver or at Knox, and asked that the cause be sent to Starke county for trial. With this motion appellants filed the affidavits of thirty-one residents of Center township, in Starke county, each of whom stated that the defendants and the state could have a fair and impartial trial in that county. Neither the motion nor any of the affidavits stated that appellant Byers had lived for many years with his mother at Knox, in Starke county, and that all of the defendants had met at Knox, the night before the attempted robbery, and after remaining there over night had driven directly to Culver, though such facts appear from the record, without contradiction. The statute prescribes "the most convenient county" as the one to which the venue shall be changed. §2078 Burns 1914, Acts 1905 p. 584, §207.

But the judge to whom the application is presented exercises a judicial discretion in determining to what county a cause shall be sent, and his decision will only be set aside for manifest abuse of discretion. No such abuse is shown by the record in this case.

Eleven days after the special judge of the Marshall Circuit Court had entered an order that the venue be changed and the cause sent to Kosciusko county for trial, appellants filed with him a motion to modify such order, and to send the cause to Starke county, for certain alleged reasons. It appears that the transcript on change of venue had not yet been filed in the Kosciusko Circuit Court, and was not filed there until five days later. It may well be doubted whether a court which has made a final and unconditional order, upon proper application, that the venue of

a cause be changed to a court in another county, can revoke that order on the *ex parte* application of one party, without the consent of the other. But, however that may be, no abuse of discretion in overruling the motion is shown. The mere fact that a murder had occurred in Kosciusko county after the change of venue was ordered was not sufficient to entitle appellants to a trial in Starke county, which their motion demanded.

There was little conflict in the evidence. It showed that Byers had lived in Knox, Indiana, all his life of 21 years; that he frequently drove a truck to Chicago; that he met Fox there six months before the date of the robbery and murder, and three or four times thereafter, and talked with him about plans to rob the bank at Culver every time they met; that Byers asked Fox to get two men to assist them, and Fox notified him by long distance telephone when they would reach Knox; that after remaining all night in Knox the party drove in two large automobiles, obtained in Chicago, to a point two or three miles northwest of Culver, where they left one car, and drove to Culver in the other car. All were armed with revolvers, and they had planned what each should do, two of them being assigned to guard the persons found inside the bank, one to gather up the money, one to stay with the car, and one to watch in the lobby and run in and out while the money was being taken. The bank officials and a customer were compelled, by violence and threats of killing them, to stand in a back room with their faces to the wall and their hands up. Several thousands of dollars were carried out from the vault and laid on a table near the door, and one of the men put into his pockets a package of bills and some loose cash which he found in the safe. An alarm having been given, the fire whistle was blown and the citizens who inquired about the supposed fire were told

by telephone that the bank was being robbed. Many persons with guns collected near the bank, including Mr. Saine, who was the fire chief, and operated a store not far from the bank, on the other side of the street. He came out of his store with a rifle and walked down opposite the bank, where he pointed his rifle at the driver of the car and spoke to him. The driver had climbed in behind the steering wheel, and another of the robbers ran out and jumped in the back part of the car. Just before or just after the car was started, one or more shots were fired from inside the bank, and two or more from inside the car, toward Mr. Saine, and he fell mortally wounded, while another man standing near him was shot in the hip. The robbers were masked, and the one who ran out and got in the car was still wearing his mask. The car then drove away in a fusilade of shots, and at the point where the other car had been left the driver took it and disappeared and was never found. The man with him drove to Knox where he was arrested. The three men who were left behind escaped from the back door of the bank, but after being pursued some distance and repeatedly shot at, they threw away their guns and surrendered. The loose money and package of bills taken from the safe were found in the pockets of the man who took them, when he surrendered at the edge of town, after running several hundred yards. It was proved by undisputed evidence that the car was in front of the bank, and that Mr. Saine stood in front of a restaurant directly across the street from the bank, at the time he was shot. But there was some evidence tending to show that the car had been started by the driver, and that Mr. Saine then commanded the driver to halt, and fired a rifle at him, and that the driver shot and killed Mr. Saine just as the car was moving out, and that one or more of the shots fired by the citizens took effect in

the hand and shoulder of the driver, and one struck the hand of his companion in the car.

This evidence was amply sufficient to support the verdict finding each appellant guilty of murder in the first degree, and fixing his punishment at imprisonment for life. §2235 Burns 1914, Acts 1905 p. 584, §347; *Cole* v. *State* (1922), *ante* 29, 134 N. E. 867.

6.

The court gave an instruction that if the robbery had been completed, or the attempted robbery had been wholly abandoned by all those engaged in it, and each person, acting for himself was attempting to escape, and one of the persons who had been so engaged then shot and killed Jacob Russell Saine in attempting to escape, the others would not be responsible for such killing; but that if the attempted escape was part of a common plan and purpose formed when conspiring to commit the robbery, that they or one of them should shoot and kill, if necessary, any person who might attempt to prevent such escape, and if Mr. Saine was shot and killed by one of them in carrying out such common plan and purpose, all engaged in carrying out said purpose would be equally guilty with the one who did the killing. It is complained that this instruction was not applicable to the evidence. But we think the facts that an automobile was stationed outside the bank while the robbery was being perpetrated, and that another had been left by the roadside two or three miles away, and that all of the party, including the driver who waited outside the bank, were armed with loaded revolvers, support an inference that the robbers had planned to flee in the automobile, and to shoot anybody who might interfere with their flight. The instruction was applicable to the evidence, and was as favorable to appellants as the facts justified.

7.

Appellants asked the court to give certain instructions to the effect that if the persons engaged in robbing the bank became frightened while so engaged, 8. and "abandoned the robbery," and each endeavored to escape in his own way, and if the driver of the automobile and another were "fleeing or attempting to flee" in the automobile when citizens shot at them, and one of them then killed Mr. Saine under the belief that it was necessary in order to save themselves, the defendants who did not kill him could not be held to have committed the murder on account of any agreement or conspiracy to rob the bank because any such conspiracy was at an end. The court properly refused to give these instructions, and left to the jury the question whether or not there was a conspiracy to kill whoever might attempt to prevent the escape of the robbers. Besides, the undisputed evidence showed that the robbery was not wholly abandoned, but that at least one of the robbers who fled was afterward arrested with part of the stolen money in his pockets. The instructions which the court gave were quite as favorable to the appellants as they were entitled to.

The following language of the Court of Appeals of New York is applicable to the case at bar. "Whatever may be the other requirements of an effective abandonment of a criminal enterprise, it is certain both as a matter of law and of common sense that there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. It must be possible for a jury to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be not only such as to show a determination on the part of the accused to go

no farther, but also such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act in question is committed. A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme that he has helped to devise and carry forward because, as the result of fear or even of a better motive, he concludes to run away at the very instant when the act in question is about to be committed, and when the transaction which immediately begets it has actually been commenced, as in this case. While it may make no difference whether mere fear or actual repentance is the moving cause, one or the other must lead to an actual and effective retirement before the act in question has become so imminent that its avoidance is practically out of the question." *People* v. *Nichols* (1921), 230 N. Y. 221, 129 N. E. 883, 885.

Where there was obviously no abandonment nor attempt to abandon the criminal enterprise until the very moment which preceded the fatal shot, and shooting those who might attempt to bar an escape in the automobile seemed a probable part of the original plan, and especially where part of the stolen money was carried away in the attempted flight, as in the case at bar, it would have been an invasion of the province of the jury to have declared that "the conspiracy was at an end" the instant that the automobile began to move away from the scene of the robbery. The court properly left to the jury, by its instructions, the question whether the attempted robbery had been "wholly abandoned," and whether each was acting for himself in trying to escape, and whether the shooting while getting the automobile started was part of the common plan formed by the parties when conspiring to commit the robbery.

The instruction given by the court to the effect that if Saine was shot and killed by one of the defendants

while all were voluntarily engaging in the perpetration of a robbery, proof that the killing was done purposely and with premeditated malice was not essential to establish that all were guilty of murder in the first degree, was correct. *Cole* v. *State, supra.*

The trial court gave an instruction, of which appellants complain, to the effect that if a robbery of the bank was being perpetrated, and Mr. Saine was attempting to prevent the robbery or the escape of the robbers, he had the right and it was his duty, although a private citizen, to use necessary force and any reasonable, necessary means, even to the extent of taking the life of one or more of the robbers to prevent the robbery or to prevent the escape of any robbers, and that it was his right and duty, without a warrant, to arrest the robbers, and to prevent their escape. And the court refused to give instructions asked by appellants to the effect that if Mr. Saine either shot at the two men in the automobile, or raised his gun to shoot at them, and, in the exercise of good judgment, they honestly believed that he was about to shoot at them, and that they were in danger of death or serious bodily injury, such killing would be justifiable homicide, and the defendants must be found not guilty. And that an officer or other person attempting to arrest one believed to have committed a felony may use no more force than is necessary, and if he shoots or threatens to shoot the person sought to be arrested, such person may forcibly resist, even to the extent of killing his assailant, if in the exercise of his honest judgment he deem it necessary, to preserve his own life or to save himself from great bodily harm. No error was committed in giving the instruction complained of, nor in refusing the instructions asked. *Kennedy* v. *State* (1886), 107 Ind. 144, 147, 6 N. E. 305, 57 Am. Rep. 99.

Appellants complain that the proposition was three

times repeated, in three successive instructions, that if the defendants were jointly engaged in the perpetration of a robbery pursuant to a conspiracy to rob, and one of them, while so engaged, shot and killed Mr. Saine, all the defendants engaged in the robbery would be guilty of the murder. Each of the three instructions differed from the others, in that each sought to bring into prominence a particular rule of law against the background of the proposition above stated. While it is not well that a proposition shall be reiterated in giving instructions, we do not think that the appellants were prejudiced by the repetition complained of.

The judgment is affirmed.

Townsend, J., absent.