MARY SURRATT, AS GUARDIAN FOR ALTHAMA SURRATT, AND JOAN HENDERSON *v.* PETROL, INC.

[No. 3-373A27. Filed June 20, 1974. Rehearing denied September 11, 1974. Transfer denied February 18, 1975.]

*Thomas H. Singer, Alexander Lysohir, Lysohir and Singer,* of South Bend, for appellants.

*Vincent P. Campiti, Arthur A. May, Crumpacker, May, Levy & Searer,* of South Bend, for appellee.

GARRARD, J.—This is an action brought by the passengers in a stolen automobile for injuries they sustained when the automobile crashed. The background may be briefly stated as follows: On October 29, 1968, during the morning an employee of Petrol, Inc. parked a company car on the street across from the Petrol gas station. The employee left the keys in the ignition, and around 11:00 a.m. one Raymond English stole the automobile. No one saw English leave with the auto, but shortly after 11:00 a.m. an employee of Petrol discovered the car was missing and reported the theft to the police.

After taking the car, English drove around for a while and picked up two male friends, Donald Smith and Alonzo Poindexter. They went to a Burger Chef and then drove to LaSalle High School. The plaintiffs, high school students, were just leaving school at the time and asked English for a ride to the post office and home. This English agreed to.

Meanwhile, one William Farmer, manager of the Petrol service station and bulk plant, had been out looking for the stolen car. He first saw the car at the Burger Chef and followed it when it left. He then stopped at a gas station and

directed the attendant to call the police and inform them that he was following the stolen car and would keep it in sight. Although he momentarily lost sight of the car, he found it again at the high school. As the car, then occupied by the plaintiffs, left the high school, Farmer pulled his car into their lane as they approached and then turned and followed them when they pulled around him. At this point, English accelerated and Farmer continued to follow. English avoided a red light by driving through a corner gas station and Farmer followed. English then disregarded a stop sign and an intersection collision with a third automobile resulted. Henderson and Surratt were both injured and brought this action against Petrol asserting liability based upon negligence of the Petrol employee in leaving the keys in the ignition and the actions of Farmer in pursuing the vehicle.[1]

In due course the defendant Petrol, Inc. moved for summary judgment on each of the theories of liabiilty. The trial court entered partial summary judgment on the issues relating to the ignition keys having been left in the car and subsequently granted summary judgment on the other issues. These grants of summary judgment are the basis of this appeal.

## I. LEAVING KEYS IN IGNITION NOT PROXIMATE CAUSE OF INJURIES.

In 1952 in *Kiste* v. *Red Cab, Inc.*, 122 Ind. App. 587, 106 N.E.2d 395, this court held that, as a matter of law, a similar claim for personal injuries sustained in a crash with a stolen car, was insufficient where it was based upon alleged negligence of the owner in leaving the car parked unattended with the keys in the ignition and the motor running.

Appellants, however, assert that we should reconsider our ruling in *Kiste* because of the lapse of more than 20 years since that decision and the asserted increase in automobile

---

1. William Farmer was originally a party defendant, but the action against him was dismissed by agreement of the parties.

theft statistics during the interval. Secondly, appellants assert that in the instant case the car was left unattended in a "high crime area" and, as such, falls within an expressed exception to the rule recognized in *Kiste*.

We examine the latter assertion first. Appellants assert that the rule established in *Kiste* is that the plaintiff cannot recover for the reason that negligent operation of the motor vehicle by a thief is not a foreseeable risk chargeable to the owner, *unless* the owner negligently leaves the car with the keys in the ignition in a high crime area.

It is true that in *Kiste* the court, after surveying other jurisdictions and noting that liability under statutes prohibiting the operator from leaving the keys in the ignition existed only in the District of Columbia and in the First District of Illinois, observed obiter:

> "It is our observation that in the absence of clear legislative declaration this result would not ordinarily be reached except where the surrounding circumstances clearly point to both a high probability of intervening crime, and of like pursuant negligent operation of the vehicle by the thief. We do not presume to affirm or deny that such circumstances are highly probable in the District of Columbia or the First District of the Appellate Court of Illinois. We do assert with some satisfaction that such circumstances are not reasonably foreseeable in this jurisdiction." 122 Ind. App. 587, 596.

However, the holding in *Kiste* makes it clear that the court was not attempting to carve an exception by the above-quoted language for the relevance of foreseeable risk is to the duty owed by the actor. The result reached in *Kiste* was not based upon lack of duty.

In other words, the possible relevance of foreseeability is dependent upon the harms that the statute in question was enacted to guard against. Upon that question the court stated:

> "We are urged to construe the statute and determine whether the legislative intent, as expressed in the act,

was to prevent theft of automobiles and all harms resulting therefrom or whether the intent was to define as *negligence per se* acts which were already recognized as negligence in the common law. . . . However, *a decision upon this issue is not required.*" 122 Ind. App. 587, 593. (our emphasis)

The court proceeded by stating:

"The case can be decided upon the issue as to whether 'stopping the engine, locking the ignition and removing the key' was the *proximate cause* of the injury occasioned by the negligent operation of the vehicle by a thief. It is upon this latter issue that the cases have been most decisively adjudicated." 122 Ind. App. 587, 593-594. (our emphasis)

"Although the statute may define an act as negligence, it does not satisfy the requirement of proof that the particular act was the proximate cause of the injury." 122 Ind. App. 587, 595.

It is our opinion that *Kiste* properly decided that as a matter of law, the negligent leaving of the ignition keys in the automobile could not be considered the proximate cause of injuries later resulting from the negligent operation of the stolen automobile by a thief. Accordingly, the trial court properly granted summary judgment to the defendant upon this issue.

Because of our holding on the first issue, plaintiffs' three separately asserted errors relating to the trial court's rejection of crime study statistics pertaining to auto theft and a request for admission that the area where defendant's car was originally left was a high crime area were harmless error, at most, and will therefore not be treated further herein.

## II. DUTY OF CARE TO DISCOVERED TRESPASSERS ON CHATTELS.

The second principal contention of the plaintiffs is that the trial court erred in granting summary judgment on the liability question presented by Farmer's actions in attempting to recover the automobile and/or apprehend English.

In considering the court's action on this issue, the now well-established law of Indiana relating to motions for summary judgment in tort cases must be borne in mind. In deciding whether there is an issue of material fact in a case, all doubts must be resolved against the party asking for summary judgment. If there is a question of state of mind, credibility of witnesses, or weight of testimony, summary judgment should be denied. Thus, in determining whether a question of material fact exists, the trial court must premise its ruling upon the basis of the evidence most favorable to the opponent of the motion and the reasonable inferences to be drawn therefrom. *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N.E.2d 688; *Verplank* v. *Commercial Bank* (1969), 145 Ind. App. 324, 251 N.E.2d 52; *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N.E.2d 215; accord: *Central Realty Inc.* v. *Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N.E.2d 383.

Within this context, we examine the plaintiffs' claim and the defenses asserted thereto.

Plaintiffs' basic contentions, submitted by stipulation as a result of the pre-trial conference, are that the defendant was guilty of negligence, or in the alternative, was guilty of wanton or willful misconduct, in attempting to run the stolen vehicle off the road, flashing a gun at its occupants and chasing the vehicle at high rates of speed at a time after the original theft when the defendant knew, or in the exercise of reasonable care should have known, that the driver of the automobile had taken on as passengers the plaintiffs who were not a part of the theft.[2]

The trial court, which did an admirable job in its order setting forth the relevant undisputed facts and its specific

---

2. While there is admittedly a question of fact regarding the application of *respondeat superior* to Farmer's actions, for purposes of this appeal the defendant has assumed *arguendo* that Farmer was acting as an agent within the scope of his authority. Thus, it is defendant's position that even assuming agency, as a matter of law, the plaintiff is not entitled to recover.

findings, granted the summary judgment upon the alternative bases that (a) the defendant owed to the plaintiffs no duty of reasonable care and this was specifically true because at the time of the injuries, plaintiffs were trespassers, and (b) the activity of Farmer in either following, chasing or attempting to apprehend the thief was justified, excused and privileged.

While the element of duty has long been recognized as necessary in an action for an unintentional tort,[3] some examination of its import is helpful in the present case.

The term properly has two dimensions. The first concerns whether the defendant owed a duty to the party who appears as plaintiff, for if he did not there can be no recovery. *Dempsey* v. *Test* (1933), 98 Ind. App. 533, 184 N.E. 909; W. Prosser, *Law of Torts*, p. 331 (3rd Ed. 1964).

As framed in the Restatement of Torts, which avoids use of the term "duty", the actor's conduct to be negligent must create a recognizable risk of harm to the plaintiff "individually, or to a class of persons—as, for example, all persons within a given area of danger—of which the [plaintiff] is a member." *Restatement (Second), Torts,* § 281, comment *c.* (1965).

Thus, in a negligence case the application of the element is directed toward the issue of "the foreseeable plaintiff", or "the relation between individuals which imposes upon one a legal obligation for the benefit of the other." W. Prosser, *Law of Torts,* p. 331 (3rd Ed. 1964).

As Professor Prosser states:

"In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and *in negligence cases,* the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk." W. Prosser, *Law of Torts,* p. 331 (3rd Ed. 1964). (our emphasis)

3. See, for instance, Faris v. Hoberg (1892), 134 Ind. 269, 33 N.E. 1028.

This is true for when a "negligence" case is postulated, the second dimension of duty—the standard of care to be applied—is automatically presupposed.

Certainly the most familiar area of unintentional tort law dealing with the standard of care aspect of duty is that involving the duty owed by owners and occupiers of land. Here the courts have agonized for years over determining whether plaintiff is a trespasser, a licensee, or an invitee, and what respective duty the defendant may be said to owe to those in plaintiff's thus-determined status.

In *Cleveland, etc. R. Co.* v. *Means* (1914), 59 Ind. App. 383, 395, 104 N.E. 785, 789, *reh. den.* 59 Ind. App. 412, 108 N.E. 375, the court wisely observed:

> "Our investigation of this question leads us to conclude that much of the apparent confusion in the exceptional cases in different jurisdictions has arisen from an effort to put the injured party in the particular case in one or the other of said relations to the owner of the premises and in then applying the general rule applicable to such relation, when in fact such particular relationship was not necessarily important; . . ."

Here, on the issue of duty,[4] if the standard of care be negligence, the plaintiffs as members of the class using the public streets over which the chase occurred and, in particular, as occupants of the vehicle being chased, are clearly within the boundaries of those to whom a duty is owed by the chaser.

Thus, the question of defendant's duty here is one of the standard of care owed. If the standard requires more than negligence to create liability, plaintiffs' contentions merely asserting negligence must fail.

Defendant correctly urges that plaintiffs' status, vis-a-vis the defendant is one of the trespasser.[5] Plaintiffs contend,

4. i.e., excluding for the moment any consideration of whether defendant's acts either constitute negligence or satisfy the requirement of proximate cause.

5. That plaintiffs did not intend to trespass is immaterial. Hawke v. Maus (1967), 141 Ind. App. 126, 226 N.E.2d 713.

however, that the duty applicable to a trespasser on land does not apply to a trespasser on a motor vehicle, and that in any event the duty to a trespasser *once discovered* should enable their claim to withstand summary judgment.

In examining the duty one may owe to trespassers on land, the secondary authorities attach significance to whether or not the trespasser has been discovered (or should have been) and the type of conduct which results in his injury.

Thus, the *Restatement (Second) Torts*, § 336 (1965) states:

"A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to *carry on his activities* upon the land with reasonable care for the trespasser's safety." (our emphasis)

Prosser observes:

"The most important exception as to the adult trespasser is the now generally accepted requirement that the occupier must exercise reasonable care for his safety once his presence is known. This is lineally descended from the older rule, that the possessor of land was not free to inflict unreasonable intentional injury upon his unwelcome visitor."

\* \* \*

"In a few states the courts, so far as their express language goes . . . have refused to find any liability to the trespasser, even after his presence is known, unless there is 'wilful or wanton' conduct. Some of these courts have in fact retreated from this position by the expedient . . . of misdefining 'wilful or wanton' to include any failure to use ordinary care after it is discovered that the trespasser is there. The great majority have discarded 'wilful or wanton' entirely as a limitation, and have said outright that once the presence of the trespasser is discovered, there is a duty to use ordinary care to avoid injuring him, as in the case of any other human being. The defendant is then required to govern his *active conduct*, . . . with the caution of a reasonable man for the trespasser's safety." W. Prosser, *Law of Torts*, pp. 369, 370 (Third Ed. 1964). (our emphasis)

While the adage that the only duty to a trespasser is to avoid willfully or wantonly injuring him has been often stated by our courts, an analysis of the Indiana decisions supports the position taken by the Restatement.[6]

In 1893 our Supreme Court held a demurrer was properly sustained to a complaint alleging both negligence and willfullness regarding the death of plaintiff's decedent who had gone into a very narrow archway covering defendant's siding track at a mill. It was not alleged that the railroad knew of decedent's presence. Considering duty the court stated:

> "It does owe him the duty of all reasonable effort to avoid injuring him when his presence and his own inability to avoid injury are known to it, but does it owe such duty when his presence is not known?
>
> "It would seem that a negative answer is all that the inquiry is susceptible of." *Parker* v. *The Pennsylvania Company* 1893), 134 Ind. 673, 679-680, 34 N.E. 504, 506.

In *Southern R. Co.* v. *Wahl* (1925), 196 Ind. 581, 149 N.E. 72, the plaintiff, a trespasser walking along defendant's track, had fallen and was stunned when the train came and struck him. Although the court reversed a verdict for plaintiff, it also examined the assertedly improper overruling of a demurrer to the negligence paragraph of plaintiff's complaint. In holding the demurrer properly overruled, the court stated that the complaint alleged actual knowledge of plaintiff lying on the track and upon proof of such facts he might recover.[7]

---

6. We consider it unnecessary to examine some of our 19th century cases involving railroad liability to trespassers. Without question some of these cases, at least as an alternative ground for holding, did apply the rule that liability could not be predicated upon negligence in failing to stop a train for a perceived trespasser on the tracks away from a crossing area. See, e.g. Dull v. Cleveland, etc. R. Co. (1899), 21 Ind. App. 571, 52 N.E. 1013 and earlier cases cited therein. It also appears that the court treated plaintiff's presence on the track as contributory negligence as a matter of law which would necessarily bar recovery.

7. This case, as well as some others, refers to knowledge of plaintiff's peril and the doctrine of last clear chance. However, the extent of the duty recognized is clearly negligence, since "last clear chance" is not a basis for an action, but is merely a means of avoiding the bar of contributory negligence. The right of action still depends upon a defendant's negligence in the first instance. City of Michigan City v. Werner (1916), 186 Ind. 149, 114 N.E. 636; Flynn v. Reberger (1971),

The most comprehensive discussion of the problem in our cases is to be found in *Cleveland, etc. R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N.E. 785, *reh. den.* 59 Ind. App. 412, 108 N.E. 375, where the court affirmed a verdict in favor of plaintiff over the death of her minor son who was killed while playing on the railroad track in an area where children were accustomed to play. As previously set out, the court observed that much of the confusion which has arisen is due to efforts to put the injured party in one particular relationship.

The court then proceeded to analyze the various positions taken by the courts, including the concepts of last clear chance and attractive nuisance, stating:

> "In many of these cases to which the attractive nuisance doctrine and the doctrine of last clear chance have been applied, where children have been involved, a careful examination and scrutiny of the facts upon which they rest will disclose that such duty to observe care is not, necessarily, dependent on a contractual relation between the parties, nor does it necessarily depend on any consideration of benefit received or to be received, by either from the other, or any promise, inducement or invitation, express or implied, extended by the one to the other, but it will be found that such duty, in its last analysis, arises out of the emergency and necessities presented by the facts of the particular case and rests primarily upon, and has its origin in an inherent sense of justice and humanity present in every civilized and enlightened people which places so high a regard on life and limb that it will not permit their possessor, when helpless and in a situation of peril, to be deprived of the one or injured in the other by an affirmative act of negligence of another in the use of his property when such person *has knowledge*, actual or constructive of the helpless and perilous situation of the former, without charging such person with the damages resulting from such negligence, even though the possessor of such life or limb may have been guilty of a negligent act that was a remote cause of such injury, in that such negligent act brought him into such place, or situation of peril." 59 Ind. App. 383, 398-399.

149 Ind. App. 65, 270 N.E.2d 331. If the original duty was to refrain from willful or reckless conduct, the court would not be concerned for then contributory negligence is not a defense. Hoesel v. Cain (1944), 222 Ind. 330, 53 N.E.2d 165, *reh. den.* 222 Ind. 349, 53 N.E.2d 769.

Considering the asserted differences between adult and infant trespassers the court said:

". . . [A]s to the duty of discovery on its premises, when it has no knowledge, actual or constructive, of such presence or probable presence the duty of the railway company is the same as to both, viz., such company owes no duty to either to keep a lookout for his presence, but it owes to each the duty of ordinary care after there is knowledge of such presence, . . ." 59 Ind. App. 383, 402.

The court concluded the relevant portion of the opinion with the following as the reason behind the rule:

"It does not follow from what we have said that a railroad company is an insurer of the safety of children who come on its premises, either as licensees or trespassers, or that it at all times and at all places owes them the duty of any care. Its obligation is simply that which should attach and under the law 'attaches to every member of society when he undertakes to exercise a personal right in a manner which may affect the welfare or safety of another member, the obligation of reasonable care . . . [and this] may, at times, seem to be a burden, but its enforced observance is never a wrong, whether applied to railroad companies or to individuals.' *Edgington* v. *Burlington, etc., R. Co., supra* [116 Iowa 410], 422, 446. Reasonable care in such cases does not impose any duty where the presence of a child on its tracks is merely possible or where such duty of care imposes on the company an unreasonable limitation on the usual and ordinary use of its property. A correct and pertinent statement affecting this phase of the question will be found in the case of *Chicago, etc., R. Co.* v. *Krayenbuhl* (1902), 65 Neb. 889, 902, 904, 91 N.W. 880, 881, 883, 59 L.R.A. 920, where it is said: 'It is true, as said in *Loomis* v. *Terry* [1837], 17 Wend. [N.Y.] *496, *500, 31 Am. Dec. 306, 'the business of life must go forward'; the means by which it is carried forward cannot be rendered absolutely safe. Ordinarily, it can be best carried forward by the unrestricted use of private property by the owner; therefore the law favors such use to the fullest extent consistent with the main purpose for which, from a social standpoint, such business is carried forward, namely, the public good. Hence, in order to determine the extent to which such use may be enjoyed, its bearing on such main purpose must be taken into account, and a balance struck between its advantages and disadvantages. If, on the whole, such use defeats rather than promotes the main purpose, it should

not be permitted; on the other hand, if the restrictions proposed would so operate, they should not be imposed. . . . Hence, in all cases of this kind, in the determination of the question of negligence, regard must be had to the character and location of the premises, the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relations such precautions bear to the beneficial use of the premises.' " 59 Ind. App. 383, 407-408.

This last quotation was recently cited with approval by the court in *Chicago, etc., Ry. Co.* v. *Sagala* (1966), 140 Ind. App. 650, 221 N.E.2d 371.

It therefore appears that our decided cases recognize an exception to the willful or wanton misconduct standard applicable to trespassers on land, and it is this: An owner or occupier owes a duty of reasonable care to a discovered trespasser not to injure him through active conduct. In addition, where the owner also realizes, or should realize, that the trespasser is in a position of peril, the Last Clear Chance Doctrine is applicable.

In considering the application of the foregoing to a discovered trespasser on a chattel, in this case an automobile being operated upon the public streets, a further distinction from the reasoning behind the willful-wanton standard must be noted.

In the case of the trespasser to land where the willful-wanton standard applies, a coordinate to the social purpose favoring the free use of private property exists. It was felt, and rightly so, that to require an owner to exercise ordinary care to protect his unwanted callers in vast or remote areas would impose an extremely costly burden on private ownership from which society would gain no benefit. Such underlying thoughts are not applicable to a discovered trespasser riding in an automobile. On the contrary, under such circumstances the appropriately recognized social concern is that addressed to the safe use of the public streets and highways.

As the question of reasonable care is one of fact, and the "discovered" character of plaintiffs, if not admitted, is presented at least as a disputed fact by the depositions on file, summary judgment was not proper on the basis that defendant owed no duty to plaintiffs because they were trespassers.

Nor can the ruling be sustained on the basis of proximate cause. While a jury might well decide defendant's actions were not a proximate cause of the injuries, we cannot say this is so as a matter of law.

To effect liability, the law does not require defendant's conduct to be the *only* causative act. Where defendant's act is the cause which sets in motion the chain of circumstances leading to the injury, which in natural and unbroken continuous sequence leads to the result, proximate cause may be found. *Hayes Freight Lines, Inc.* v. *Wilson* (1948), 226 Ind. 1, 77 N.E.2d 580; *New York Central R. Co.* v. *Cavinder* (1965), 141 Ind. App. 42, 211 N.E.2d 502.

Thus, in *Newcomb* v. *Cassidy* (1969), 144 Ind. App. 315, 245 N.E.2d 846, the plaintiff sued for injuries when the car in which she was riding, during a race between two cars, crashed. There was no contact between plaintiff's car and the other racer. The trial court granted summary judgment for the other driver in the race, and this court reversed holding that the causal connection between his activity and the crash was for the jury.

## III. DUTY OF CARE TO THIRD PERSONS BY CITIZEN ATTEMPTING ARREST.

The remaining reason assigned to the grant of summary judgment is that defendant's conduct was privileged because at the time Farmer was attempting to apprehend a felon.

It is well recognized in Indiana that a private citizen has the right to arrest one who has committed a felony in his

presence, and may even arrest one he reasonably believes to have committed a felony, so long as the felony was in fact committed. *Knotts* v. *State* (1963), 243 Ind. 501, 187 N.E.2d 571; *Doering* v. *State* (1874), 49 Ind. 56; *Golibart* v. *Sullivan* (1903), 30 Ind. App. 428, 66 N.E. 188.

Furthermore, as to the arrestor, he is entitled to use reasonable force to prevent the crime or arrest the felon.

What we are called upon to examine here is the extent to which a citizen's negligent or reckless conduct may be excused when it results in injury, not to the arrestee, but to third persons.

It has been said that the underlying principle supporting a privilege attendant to the prevention of felonies by private citizens is that in so doing, the citizen furthers an interest of community social importance, the prevention of crime and speedy apprehension of criminals. *Yingst* v. *Pratt* (1966), 139 Ind. App. 695, 220 N.E.2d 276.

On the other hand, social policy also favors the protection of the citizenry from general resort to activities reasonably calculated to endanger life and limb.[8] See, *Plummer* v. *State* (1893), 135 Ind. 308, 34 N.E. 968; *Kunkle* v. *State* (1869), 32 Ind. 220.

In the competition between these principles, certain gradations of acceptable action have been established based upon the circumstances surrounding the actor's conduct.

Thus, where the crime involved is a felony of violence, the actor may use deadly force to prevent the commission of the felony or to prevent the felon's escape from the scene. *Burns* v. *State* (1922), 192 Ind. 427, 136 N.E. 857; *Kennedy* v. *State* (1886), 107 Ind. 144, 6 N.E. 305 (both involving robberies).

---

8. In Bailey v. L. W. Edison Charitable Foundation, discussed *infra*, Judge Hoffman observed, "Thus, the protection of life and property by capturing a fleeing offender who, by not stopping his vehicle, wantonly and wilfully endangers public safety must be weighed against the possibility of endangering life and property by commencing or continuing pursuit."

On the other hand, such force is not justified, even by a police officer, to arrest for a misdemeanor. *Plummer* v. *State* (1893), 135 Ind. 308, 34 N.E. 968.[9]

Similarly, force which might be justified to prevent the consummation of the offense may not be justified to later apprehend the culprit or recover the property. *Golibart* v. *Sullivan* (1903), 30 Ind. App. 428, 66 N.E. 188 (approving an instruction on the use of force the court rejected the argument that it was a citizen's duty to capture one guilty of criminal trespass).

In *Kunkle* v. *State* (1869), 32 Ind. 220, the court upheld a conviction of assault and battery with intent to kill where the defendant shot his brother-in-law when the latter was engaged in taking wood from a pile which defendant said was his. The trial court had instructed the jury that in an attempt to recapture property a resort to means reasonably calculated to endanger life and limb should not be encouraged or justified. Holding the instruction was not harmful error, the Supreme Court said:

> "Indeed, the court might have gone further. The instruction does not relate to the degree of force that may be used in the defense of the possession of personal property, *but in its recapture after it has been taken* from the possession of the owner, in which case the law does not justify the owner in a resort to such force as will amount to a breach of the peace, but leaves him to his legal remedy." 32 Ind. 220, 234. (our emphasis)

The extent of force permitted and the circumstances under which it may be used have, thus, been equated to the rights of self defense. *Yingst* v. *Pratt, supra.*

These same general considerations have been applied in determining the duty of care owed to third persons when one attempts to effect an arrest or prevent a crime.

---

9. The court reversed a conviction of manslaughter, where the defendant had shot a town marshal who had first struck defendant with his "billy" and then shot at him. Defendant's openly carrying a dangerous weapon with the avowed purpose of killing a fellow man (a misdemeanor) was not justification for the marshal's actions. Therefore, the defendant was entitled to self defense.

In *Yingst* v. *Pratt, supra,* the court reversed a verdict for a tavern customer accidentally shot while the owner was struggling with a would-be armed robber. During the struggle several shots were fired from the robber's gun, with neither the gun nor the robber being under the tavern owner's control. As the combatants rolled on the floor to the customer's table, to protect himself and his wife the customer jumped down on the robber's gun hand and was thereafter shot.

The court stressed that the crime involved was one of violence and held that *ordinary resistance* which might otherwise cause actionable damage was to be held privileged. However, a *caveat* was attached to reckless conduct, as had the owner used a shotgun or machine gun, the court stating:

> ". . . [T]he force employed must not be out of proportion to the apparent urgency of the occasion." 139 Ind. App. 695, 700.

Thus, the citizen's mere negligence, or failure to use reasonable care, was excused as a matter of law due to the right to arrest and prevent the crime *and* the emergency nature of the situation.

> "He should be chargeable with no greater legal duty to use care for the protection of others than he, in the emergency, has seen fit to use to protect himself." 139 Ind. App. 695, 700.

In accord with these distinctions traditional in our law, we hold that where the felony is not one of violence and the sudden emergency which attends its commission is past, the standard to be applied regarding injuries to third persons to whom the citizen attempting to make the arrest owes a duty, is that the citizen must use reasonable and ordinary care.

This is not to say there is no privilege, for under the familiar principles of negligence law, what satisfied the standard will depend upon what a reasonably careful and prudent

person would do *under the same or like circumstances*.[10] It *is* to say that the question is ordinarily one of fact.

The *Restatement (Second), Torts* is in agreement with this position. Section 137, regarding harm to innocent third persons in making or attempting to make an arrest, incorporates by reference the rule of Section 75 which states:[11]

> "An act which is privileged for the purpose of [making an arrest] . . . subjects the actor to liability to a third person for any harm unintentionally done to him only if the actor realizes or should realize that his act creates an unreasonable risk of causing such harm."

Nor does this conflict with the decision in *Bailey* v. *L. W. Edison Charitable Foundation* (1972), 152 Ind. App. 460, 284 N.E.2d 141.

In *Bailey* the court affirmed summary judgment on behalf of police officers for alleged negligence in causing the death of passengers in a vehicle which crashed after being pursued by the officers. The officers, on duty at the time, had nearly been hit by the other vehicle which ran through a red light at 75-80 miles per hour. The officers turned on their flashing red light and gave chase, later turning on their "yelper" also.

The court reached its decision upon two grounds. First, as the police officers had a legal *duty* to pursue the vehicle, the court ruled that the policemen "were in no way negligent in giving chase." Therefore, since there was no independent negligence asserted in the way they gave chase, the summary judgment was proper.

While *Kennedy* v. *State, supra,* and *Yingst* v. *Pratt, supra,* each contain *dicta* intimating a citizen's duty to arrest at the time a felony is being committed, no Indiana cases have imposed or suggested a legal duty upon a private citizen to arrest for a felony after its completion.[12] Indeed to do so would open

---

10. See, e.g., Indiana Pattern Jury Instructions, § 5.01, 5.03 and cases cited therein.

11. Compare to Restatement's language on action for negligence, discussed *supra*.

12. Both the Burns and Kennedy cases use the phrase "right and duty", but clearly they are only concerned with the right as a justification defeating the felon's claim of self defense.

vistas of liability which neither we nor society are prepared for.

Accordingly, evidence of a high speed chase by a private citizen, at least when coupled with other conduct such as an attempted blockade and pistol waving, are sufficient to raise an issue of reasonable care for the trier of fact.

Secondly, in *Bailey* it was found that the pursuit by the police, as a matter of law, could not be said to be the proximate cause of the crash. When the operator of a vehicle in response to pursuit by a regular police car with red light flashing and siren or yelper operating, elects to flee rather than stop, his volitional act rather than the pursuit is the proximate cause of the resulting crash. Upon this the minds of reasonable men would not disagree because of the common understanding of the import of such pursuit. The driver is bound to know the apparent authority of the pursuer.

The same cannot be said, as a matter of law, regarding pursuit by an ordinary citizen in an ordinary vehicle. The pursued is not bound to know his authority, and depending upon the facts involved, a reasonable mind might well conclude that flight from such pursuit was not unreasonable and the chain of causation was not broken.

At this juncture it should be noted that many of plaintiff's assertions are seriously disputed and the deposition evidence before the court on the summary judgment contains substantial conflicts. However, when the standard of considering only the evidence and reasonable inferences to be drawn therefrom most favorable to the opponent of the motion for summary judgment is applied, there is evidence that Farmer, as a private citizen, several hours after the theft of an automobile, discovered the automobile; that he then observed innocent trespassers enter the car; and thereafter he tried to blockade the car, menaced its occupants with a gun, and chased the car at speeds of 50-60 miles per hour until the car crashed. If such evidence were believed, it would be a

determination of fact whether Farmer acted negligently under the circumstances, and if so, whether that negligence was a proximate cause of plaintiffs' injuries.

For this reason the trial court erred in granting summary judgment on plaintiffs' claims asserting liability due to Farmer's actions in attempting to recover the car and apprehend English, and that portion of the summary judgment relating to plaintiffs' contentions numbered 2, 3 and 4 is hereby reversed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 312 N.E.2d 487.

## ON PETITION FOR REHEARING

GARRARD, J.—Appellee Petrol's petition for rehearing asserts the use of the term "active conduct" and the placing of any reliance upon *Cleveland, etc. R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N.E. 785, in considering the duty of care owed to discovered trespassers is at odds with the holding in *Fort Wayne National Bank* v. *Doctor* (1971), 149 Ind. App. 365, 272 N.E.2d 876.

We believe some discussion of the *Doctor* case is warranted. We first note that the facts in *Doctor* did not involve "active conduct" causative of the injury. Plaintiff's decedent, a daughter-in-law of defendant, received fatal injuries at a family gathering when she fell down a flight of steps while carrying a platter of food. The complaint in negligence asserted defendant's improper lighting in the stairway, improper maintenance of the stairway, and a failure to warn decedent that the stairs were dangerous.

The opinion, however, discusses some of the prior cases dealing with the duty of care owed to social guests or mere licensees. It first concluded that *Barman* v. *Spencer* (1898), Ind., 49 N.E. 9, had been overruled by implication to the extent it spoke in terms of "gross negligence" and purported to recognize degrees of negligence.

The court then considered use of the terms "active and passive negligence" in *Means*. Again, it characterized the terms as violating the prohibition against degrees of negligence, thereby creating an "undefined and undefinable negligence doctrine", and disapproved such a result.

The court proceeded to state that the duty of care recognized in Indiana involved what it identified as three separate concepts:

    (a) A positive wrongful act test announced in *Woodruff, Admx.* v. *Bowen* (1893), 136 Ind. 431, 34 N.E. 1113;

    (b) The wilful or wanton misconduct test relying upon language in *Lingenfelter* v. *Baltimore, etc. R. Co.* (1900), 154 Ind. 49, 55 N.E. 1021; and

    (c) The entrapment-affirmative control of the instrument test based upon *Pier* v. *Schultz* (1962), 243 Ind. 200, 182 N.E.2d 255.

The court concluded it did not need to go further since plaintiff's case did not fit any of these theories.

We concur with the court in *Doctor* that Indiana does not, and should not, recognize degrees of negligence. Negligence imports one standard, the ordinary care of a reasonable man. See, also, *Birdsong* v. *ITT Continental Baking Co.* (1974), 160 Ind. App. 411, 312 N.E.2d 104.

Accepting an analysis that precludes degrees of negligence, we are still confronted with the proposition that while some conduct creates a question of fact for the jury, other conduct (which may include non-action) is deemed insufficient as a matter of law to impose liability. In the latter instance, while it would be analytically more helpful to speak in terms of reasonable care, our courts have often stated instead that the law imposes no duty regarding such conduct.

Viewed in this context, the authorities reviewed in *Doctor* are consistent with our decision. The three decisional "rules" suggested in *Doctor* are derived from Supreme Court cases decided on demurrers to the complaint.

In *Woodruff, Admx.* v. *Bowen,* plaintiffs decedent was a fireman who had fallen to his death while fighting a fire in defendant's building. During the fire the roof gave way while the decedent was on it. The complaint asserted the lack of safe premises. In holding the allegation insufficient the court said:

> ". . . [T]he licensor owes . . . no duty except that of abstaining from *any positive* wrongful act . . . and . . . the licensee takes all risks as to the safe condtiion of the premises upon which he enters." 136 Ind. 431, 442. (emphasis added)

Thus, the court's language was used to contrast a lack of duty to maintain the premises in a safe condition with positive, affirmative or active conduct proximately causing the harm.

In *Lingenfelter* the plaintiff fell into a pit on defendant's property when, at nighttime, plaintiff left a pathway to go around one of defendant's railroad cars. Again the court observed that the defendant was to take the premises as he found them, but in dictum observed that this was subject to the rule that the licensor must not wilfully or wantonly cause the injury. That this was not intended as a restriction of the language in *Woodruff, Admx.* may be gathered from the same court's decision the following year in *Cannon* v. *Cleveland, etc. R. Co.* (1901), 157 Ind. 682, 62 N.E. 8. Again the court affirmed the sustaining of a demurrer to plaintiff's complaint where she was injured while walking along defendant's railroad track. The court cited *Lingenfelter* as controlling, but stated the duty owed to licensees as:

> ". . . not wilfully or wantonly to injure them but to use reasonable care to avoid injury to them after their danger is discovered." 157 Ind. 682, 689.

In *Pier* v. *Schultz* a child was injured on defendant's premises when a playmate threw a match into a steel barrel and its contents exploded. Again the complaint asserted the condition of the premises, the lack of fencing and failure to

warn. The court affirmed the propriety of the demurrer, footnoting *Woodruff, Admx.* and stating that it was:

". . . not alleged [the owners] committed any positive act or exercised any positive control over the instrumentality." 243 Ind. 200, 204.

It is this conduct, variously characterized as active, affirmative or positive, that may constitute for the trier of fact the failure to use reasonable care toward a discovered trespasser.

In addition, Petrol asserts that our opinion imputes to Petrol the knowledge of its employee, Farmer. Whether Petrol is chargeable with such knowledge is within the issues of *respondeat superior,* all of which were conceded *arguendo* by Petrol for purposes of the summary judgment proceeding. Accordingly, our opinion does not treat the question.

The appellee's petition for rehearing is denied. Appellant's petition for rehearing is, also, denied.

Staton, J. concurs; Hoffman, C.J., would grant rehearing on the issue of privilege attending the attempted arrest.

NOTE.—Reported at 316 N.E.2d 453.